FLEMING, Jtidge.
There seems to be considerable difficulty, in construing the acts of Assembly, concerning the course of descents and the distribution of intestates estates, as they now stand in our statute books; and therefore, it may not be improper to take a retrospective view of the whole of them.
The Legislature conceiving, that the rule of descents by the common law was not well adapted to the genius of the people and the form of our Government, totally changed it, by the act of 1785; which appears to have provided for every possible case. But, in 1792, an alteration was *made, in the case of infants dying without issue; excluding the mother, when the’ inheritance was derived from.the father, if there was living any brother, or sister of such infant, or any brother or sister oí the father, or any lineal descendant of either of them. And vice versa, where the inheritance was derived from the mother.
These provisions are preserved in the 5th and 6tb sections of the act of 1792: Which exclude any issue, which either the father or mother may have by any other person, than the deceased parent of such infant, where the inheritance was derived from such deceased parent.
So far the act is clear enough ; but the difficulty arises from the words of the next section, which are, “If there be no mother nor brother, nor sister nor their descendants, and the estate shall not have been derived, either by purchase or descent, from either the father or the mother, then, the estate shall be divided into two moieties, one of which shall go to the paternal, and the other to the maternal kindred. ”
This clause would have embraced the present case precisely, were it not for the words, and the estate shall not have been derived, either by purchase or descent, from either the father or the mother; which in strictness except the present case, and being words of important signification, I do not think myself at liberty to reject them. For I do not think it proper, in the construction of statutes to supply, reject or transpose significant words, as is sometimes done in cases on wills; because, in removing one difficulty, others may arise, and greater inconveniences, perhaps, be introduced. Thus, to add the words in case of an infant, after the word not, might remove the difficulty in the present case, as it would then run in this manner. “And the estate shall not, in case of an infant, have been derived, either by purchase or descent, from either the father or the mother.” ' By which interpola - tion the present case would *not be within the exception, as George Waugh was of full age; but had he been an infant, the same difficulty would still have existed; and the practice might, perhaps, be sometimes extended beyond the intention of the Legislature, and cases might, by the aid of supplement, be frequently brought within the meaning of a law, which were never contemplated by those who made it. So that, besides, the impropriety, óf the courts undertaking to make the Legislature speak a different language from that to be found in the statute' book, the addition would not be co-exténsive with the difficulties; and a new interpolation might become necessary, in each case that might arise. Some other more safe, and effectual mode of interpretation is therefore, to be sought for; and, I think, it is to be found, by a careful perusal of the acts upon the subject.
To me it appears, that it has been entirely owing to the mere inattention of the Legislature, and the unskillfullness of the person, who drew the act of 1792, that cases, like the present, have been left unprovided for; and that the Legislature did not intend, that so important a provision should have been, altogether, omitted. It is therefore proper, to consider, whether there be not a construction of the acts, that will support the intention of the Legislature? Which, evidently, was to provide rules of descent, for every possible case. And, I think, there is a plain natural interpretation which will effect this important object, without any violence to the text.
The 5th section of the act of 1785 fully embraces the case, and as the act of 1792 only repeals so much of other laws, as comes within its own purview; and as the present case is not within the purview of the act of 1792, which has made no manner of provision for it, it follows, necessarily, that the act of 1785 is still in force, as to the present case: And thus a complete system of descents is established, agreeable to the view *of the Legislature without recurring to the danger of interpolation, which might, perhaps, produce more mischiefs than it would remedy.
With respect to the personal estate of George Waugh, the act of 1792, concerning wills and the distribution of intestates estates, directs that the goods and chattels of an estate, if there be neither wife nor child, shall be distributed in the same proportions and to the same persons, as lands are directed to descend, in and by the act to reduce into one the several acts directing the course of descents, passed the same session, and is the one now under consideration. Both these laws have the same repealing clauses. So that the act concerning wills, like that of descents, *355 onlj' repeals so much of other laws, as comes within its own purview.
But the act of 1785 concerning' wills and the distribution of intestates estates, refers to the acts of descents of the same session, in the same manner, as that of 1792, concerning wills, refers to that of descents. Therefore, as, for the reasons already given, I consider the 5th section of the act of descents, passed in 1785, to be still in force, I think so much of the 24th clause of the act of distributions, made in the year 1785, as refers to that section, is also still in force; because it does not come within the purview of the act of 1792. My opinion consequently is, that the act of 1785, concerning the distribution of intestates estates, must give the rule for the distribution of the personal estate of George Waugh.
This way of considering, the case obviates the objection made concerning the rule of the common law; which certainly has nothing to do with the question.
Upon the whole, I am of opinion that the decree, although founded on principles differing from those I have assumed, is substantially right, and ought to be affirmed.
*CARRINGTON, Judge.
Upon the statement made of this family, the question is, who are entitled to the estates of the deceased?
The Legislature have passed three acts, relative to the course of descents. But the last, which passed in 1792, professes to reduce all laws upon that subject, into one; and by it, every possible case of intestacy was meant to be provided for: At the same time, that all prior acts, were intended to be repealed, as embraced within the provisions of the last. It becomes necessary therefore, to examine the meaning of the Legislature, in the clause in question, and to carry it into effect, if we can.
The act of 1792 proceeds to establish the different grades of descent for four sections; and then it makes an exception, in the case of infants dying entitled to property derived from one parent, declaring that the other, and the relations on that side, shall not succeed to that property; after which comes the seventh clause, which is in these words, 1 ‘ If there be no mother, nor brother, nor sister, nor their descendants, and the estate shall not have been derived either by purchase or descent, from either the father or the mother, then the inheritance •shall be divided into two moieties, one of which shall go to the paternal the other to the maternal kindred, in the following course; that is to say, &c.” going on in the next clauses, to state the rules.
Upon this clause the question, in the present case arises.
If it be taken literally, the plain meaning of the Legislature, throughout the subsequent parts of the law, will be defeated; and the intended course will be frustrated. But it is obvious, that an interpretation, tending to produce that effect, ought to be rejected, and the intent of the makers of the act observed, if possible: And I think it %nay be done without any great violation of the text, or overturning any rule of construction.
The difficulty has evidently arisen, from the omission of a few words in the sentence. The exception, and the estate shall not have been derived either by purchase or descent, from either the father or the mother, ought to be understood relatively only; that is to say, it relates to the two preceding sections, respecting infants, and was not intended to apply to any other cases; for the first and latter parts of the section refer generally to all intestacies, which proves, that the intermediate words were intended to operate as an exception. The meaning, then, of the Legislature is obvious; and to express it in more intelligible terms, I think, we should add after the word Not, in the second line of the section, the words, in case of an infant: After which the clause will read thus ‘ ‘If there be no mother, nor brother, nor sister, nor their descendants, and the estate shall not, in the case of an infant, have been derived either by purchase or descent, from either the father or the mother, then the inheritance shall be divided &c.”
This supplement which according to the rules of expounding statutes, I think we have a right to make, should also be applied to the 14th section of the act. By this means, the whole act will be rendered consistent, and all cases of intestacy will be provided for, agreeable to the meaning and intention of the Legislature. Which is certainly better, than, by adhering to the literal expression, to disappoint the will of the Legislature, and defeat the intention of the law altogether.
Therefore, although I do not exactly agree with the Chancellor, in regard to the manner of expounding the law, yet I agree with him in the conclusion; and consequently, am for affirming the decree.
*Lyons, Judge.
It is a rule in the construction of statutes, that the intention, when it can be discovered, must be followed with reason and discretion, although the interpretation may seem contrary to the letter of the statute. 11 Mod. 161; 1 Show. 491; 10 Rep. 101; 10 Mod. 281; 4 Com. Dig. 338.
Now it is evident, that when the Legislature were reducing the several acts of Assembly, concerning the course of descents, into one act, they did not mean to leave any case unprovided for; but through oversight, or too great anxiety to express their intention with caution, a difficulty has, intervened; which, if taken literally, would frustrate the object of the Legislature and leave many cases without a provision. To avoid which inconvenience it becomes necessary to give a reasonable construction to the act, so as to effectuate the intent and meaning of the Legislature, expressed in other parts of the statute. This will be effected, by taking the whole act, and all other acts made on the same subject, into one view, moulding them according to the rule laid down, in Hob. 346, to the truest and best use; and, rejecting what shall appear to be inconsistent or absurd, and tending to defeat the intention of the Legislature. Thus giving, to the law, such a construction, as will make it answer, fully, the purposes for which it was enacted.
With these principles in view, I am disposed to affirm the decree of the Court of *356 Chancerjq upon different grounds than those given by the Chancellor; which I do not entirely concur with him in: Because by his mode of correcting the 7th section he makes it necessary to alter the 14th section; which might be going too far, and doing what the Legislature did not intend to do.
My own opinion is, that either, the whole interpolation, in the 7th section, ought to be rejected, as a saving repugnant to the body of the act, ^according to 1 Co. 47: Or that the act of 1785 is to be considered as not repealed, so far as respects such estates, as are not disposed of by the act of 1792. By either of which constructions, the estate derived from the father will be disposed of, and will descend agreeable to the decree.
This interpretation puts all right; reconciles the whole course of legislation upon the subject; gives complete effect to the statute; and fulfills the object of those who made it.
For these reasons, and not those given by the Chancellor, I am for affirming his decree.
PENDLETON, President.
To enquire from what source the force of the common law of England, in this state, is derived, would, at present, be a useless speculation; since all agree, that it is the general law of the land, where it is not taken away by our statutes.
That the act of 1785 has totally done away that common law, as to the course of descents, has not been, nor can be doubted.
The rights of primogeniture are wholly abolished; and wherever there are more persons, than one, of equal degree of kindred to the intestate, they share, equally, in the succession. The succession, in the right line ascending, excluded by the common law, is here permitted: The objection, to the half blood, is removed; and the enl quiry, through what blood the lands had descended to the intestate, is abolished: The intestate is in all cases considered, as the unrestrained proprietor; and his supposed preference, from natural affection, pursued.
Under this act, it must be acknowledged, that no possible case, not provided for, can happen, so as to let in the rule of the common law.
Although this new system was generally approved, yet there were citizens who might wish, that, in case of their not having children, their lands *should return to the family they came from: This, adult persons could provide for by their wills; but infants could neither make use of, nor exercise the power; for which reason, X suppose, and probably because the infant might not generally have other estate, than what was so devised, the Legislature, in 1790, passed an act, which declares, amongst other ’things, that an infant, dying intestate and without issue, having lands devised by descent or purchase from father or mother, the other parent and relations, on that side, should be excluded from the succession; but this is confined to infant intestates, and, no otherwise, alters the general law. Then comes the act of 1792.
We are told, by the counsel, that we are | confined, in construction, to the literal force of the words in the 7th clause; and no power, on earth, but the Legislature, could change it, was his emphatical expression. I will leave it to that gentleman to reconcile this to his observations on the act of 1789, when he read the title, preamble, and ail the clauses of the law, for the purpose of confining the general term law, to statute law.
And was he not right in the latter case?
Among the rules laid down, for the construction of statutes, as collected by Bacon, are the following.
1. That, in the construction of one part of a statute, every other part ought to betaken into consideration, for that will best discover, the meaning of the makers. 6 Bac. abr. (new edition) 380.
2. A statute ought upon the whole to be so considered, that if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant. 6 Bac. abr. (new edit.) 380.
3. And, in the case relied on, that where words are express, plain and clear, they shall be understood according to the general and natural meaning *and import, it is added, “Unless by such exposition, a contradiction or inconsistency would arise in the statute, by reason of some subsequent clause, from whence, it might be inferred that the intention of the Legislature was otherwise.” 6 Bac. abr. (new edit.) 380.
The construction laboured, of the words of the 7th section, would render superfluous and insignificant the very important word infant, in the fifth and sixth sections; since it would put them and adults on one, and the same footing.
4. General words, in one clause of a statute, may be restrained by a subsequent clause, 6 Bac. abr. (new edition) 381.
This applies directly, as I suppose there is no difference, whether the restraint be in a prior or subsequent clause: Especially here, where the general words are used, by way of reference to the prior clause.
5. A remedial statute ought to be construed liberally, so as to suppress the mischief intended to be remedied, 6 Bac. abr. (new edition) 389.
The mischief was, the enquiry, when a man died intestate, perhaps at fourscore, how he came by his land; and this was done away, except in the single case of an infant dying intestate.
I will now proceed to the law of 1792. The title is, “An act to reduce into one the several acts directing the course of descents.” Which comprehended the two acts before stated (fori discover no other law;) and we find no change is made in these laws, except in the case of infant intestates, extending the exclusion, in the October session of 1792, of one parent, where the estate came from the other, to the issue which the excluded parent may have by another husband or wife.
The act then proceeds to direct the descent in the- several cases, as they may happen one after *another, repeating, in each provision, that the prior case, provided for, has not happened. To his children or their descendents, if any be; if *357 there be no children or descendents, then to his father; if there be no father, then to his mother, brothers and sisters and their descendents, or such of them as there be. Then comes the exception in the case of infants, from the act of 1792, with the extension of the exclusion to their issue; and then we come to the 7th section, supposed to be so powerful as to overturn the general system, placing adults intestates on the same footing with infants, as to the en-quiry from which parent the estate came; and to let in the common law as to them, as well, as to infants.
That this was the intention of the Legislature was admitted by the counsel; and, indeed, is so plain, that he who runs may read; and we come to the question, whether we are compelled by force of the words to violate that intention.
The purpose of the clause was to proceed and make provision for the succession, if none of the cases, before provided for, should occur. It takes it up, after the fourth which provides for the mother, brothers and sisters, in case there be no children or father, and provides if there 'be no mother brother or sister, and the estate shall not have been derived by purchase or descent from either father or mother, plainly intending to take in the exception as to infants, but omitting to use the term infant.
I observed, that if this was to be understood as a substantive enacting clause, and taken strictly, the case of the children and father not being put, the division of the estate, between the paternal and maternal kindred must take place, in exclusion of the children and father.
The answer was, that these cases were before provided for, prior to the claim of the mother brothers and sisters: And the answer was, to me *perfectly satisfactory ; because this clause did not intend to affect any of the former provisions, but to state those which had not occurred, and, in such events to provide for the new cases. In this statement it was necessary to notice the excepted case, of an infant intestate; but in doing this, there is an omission in the description of the case, provided for in the fifth and sixth sections, from their leaving out the words, “in the case of an infant as aforesaid.”
Is it not, then, consistent with the rules, for construction of statutes, that the court shall supply those words to make the clause conformable to other parts of the law, and to its general system? I have no doubt but it is.
The same observations apply to the 14th section; where the case of the infant is omitted, but yet not affected: Since that clause proceeds upon a supposition, that, under the former parts of the law, there is no impediment to the partition between the paternal and maternal kindred, and only provides for the case of there being but one or neither of those heirs.
If I had any doubt upon this point, I should be of opinion, that, in every case, if there could be one, in which the act of 1792 makes no provision, the act of 1785 would not, in that case be repealed, but would controul the common law. However, I am satisfied, notwithstanding the 7th section, that the enquiry from whom the estate descended, is confined merely to infants, and does not extend to the case of other in-testates.
As the Court differ in their reasons, the decree is to be affirmed without alteration. Decree affirmed.